UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-00313-WW

| | |
|---|---|
| MORRIS B. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| COMMERCIAL EQUIPMENT, INC., ) | |
| DWIGHT ALFORD, BLAKE ALFORD, ) | |
| and RAY CREECH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This Cause comes before the Court upon Defendants' motion to dismiss (DE-26) pro se Plaintiff's amended complaint (DE-24), to which Plaintiff untimely responded (DE-36). Also before the Court are Defendants' motions for sanctions and to compel Plaintiff's deposition (DE-38, 42), as well as a motion to seal a proposed exhibit (DE-43) and for summary judgment (DE-51). Pursuant to 28 § U.S.C. 636(c) and Rule 73 of the Federal Rules of Civil Procedure, jurisdiction of this matter was transferred to the undersigned by order of Chief Judge Louise Wood Flanagan upon consent by the parties (DE-18, 19). For the reasons stated herein, the motion to dismiss (DE-26) is GRANTED. The dismissal of the case renders the remaining motions (DE-38, DE-42, DE-43, DE-51) largely moot and they are accordingly DENIED.

## I. FACTUAL BACKGROUND

In his amended complaint, Plaintiff alleges the following: Plaintiff worked as a service technician for defendant Commercial Equipment, Inc. ("CEI"), a corporation supplying

commercial grade office equipment, from April 5, 1999 until May 15, 2008, when he was fired. (DE-24, pp.1-2).

On May 15, 2008, Plaintiff's supervisor, Frederick Spruill, asked him to report to North Carolina State University to assist in unloading a shipment of copying machines. Plaintiff informed Spruill that he could not assist in the unloading and delivery of the copiers. Defendant Ray Creech, a service manager for CEI, then telephoned Plaintiff and asked why he was unable to assist in the unloading and delivery of the copiers. Plaintiff informed Creech that he had a "documented medical condition that prevented him from assisting in the unloading and delivery of the copiers [] but did not affect his ability to perform his normal job duties of servicing and repairing copiers." (DE-24, p.2). Creech told Plaintiff he was unaware of any medical condition that would prevent Plaintiff from moving copiers, and that if he was unwilling to do so, Plaintiff should report to the office and resign. Plaintiff replied that he had no intention of resigning. He eventually reported to the office, where he met with Creech. There, Plaintiff offered to provide CEI with documentation of his medical condition, but Creech said it was "too late" and terminated Plaintiff's employment.

Plaintiff filed charges regarding Defendants' conduct with the Equal Employment Opportunity Commission ("EEOC") on November 11, 2008. (DE-24, p.3). He received a notice of his right to sue from the EEOC on May 4, 2010. Although Plaintiff's amended complaint states that he "attached a copy of the Notice of Right to Sue letter issued by the [EEOC] as Exhibit A," no such exhibit appears in the record.

On October 14, 2010, this Court granted Plaintiff's motion to proceed *in forma pauperis* and Plaintiff filed his initial complaint. (DE-4). On December 14, 2010, Plaintiff filed a motion for leave to amend his complaint in order to add an additional claim, which the Court granted.

(DE-16). Plaintiff filed his amended complaint January 27, 2011 (DE-24) and Defendants filed their motion to dismiss on June 28, 2011. (DE-26). Plaintiff thereafter filed a motion for extension of time to respond to Defendants' motion to dismiss, which the Court granted on July 27, 2011. (DE-34). In its order, the Court extended the time for Plaintiff to file his response until August 19, 2011. Plaintiff filed his untimely response on August 22, 2011. (DE-36).

In his amended complaint, Plaintiff contends he was wrongfully terminated based on his race and disability. (DE-24). Plaintiff asserts that Defendants' actions violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title 1 of the Americans with Disabilities Act of 1990, as amended ("ADA"). Defendants contend Plaintiff's amended complaint fails to state a claim upon which relief may be granted and request dismissal under Rule 12(b)(6) of the Rules of Federal Civil Procedure. (DE-26).

## II. LEGAL BACKGROUND

### A. Standard for a Motion to Dismiss Under Rule 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," Twombly, 550 U.S. at at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A court decides whether this standard is met by separating the legal conclusions from

3

Case 5:10-cv-00313-WW   Document 55   Filed 09/07/11   Page 3 of 13

the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* at 1949-50. Facts pled that are "merely consistent with" liability are not sufficient, however. *Id.* at 1949 (quoting Twombly, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [similarly] do not suffice," because courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50 (internal quotation marks omitted). Thus, a complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability, Twombly, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 570.

A pro se litigant's pleadings should be construed liberally to avoid inequity. *See* Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, 439 U.S. 970 (1978). "[I]n order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff." Garrett v. Elko, 120 F.3d 261 (4th Cir. 1997) (unpublished) (citing Gordan, 574 F.2d at 1149-51). However, even given these liberal standards, the district court "shall dismiss the case at any time if the court determines that the action … fails to state a claim on which relief can be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Thus, even a pro se complaint must contain "enough factual allegations to state a claim to relief that is plausible, not merely speculative." Ray v. Amelia Cnty. Sheriff's Office, 302 Fed. Appx. 209, 211 (4th Cir. 2008) (unpublished); *see also* R.W. v. Wake Cnty. Pub. Sch., No. 5:07-CV-136-F3, 2010 U.S.

Dist. LEXIS 91455, at *10 (E.D.N.C. Sept. 1, 2010) (noting that even a pro se complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct). Careful examination of Plaintiff's pleadings is therefore necessary to determine whether the allegations set forth sufficient facts that, when taken as true, establish plausible claims under Title VII or the ADA.

### B. Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (applying these elements in the Rule 12(b)(6) context), *cert. granted*, No. 10-1016, 2011 U.S. LEXIS 4972 (U.S. June 27, 2011); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

### C. Americans with Disabilities Act

Plaintiff also brings his claims pursuant to the ADA. The ADA provides in relevant part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To avail himself of the protections of the ADA, Plaintiff must first demonstrate that he suffers from a disability. *See id.*; Sutton v. United Air Lines, 527

U.S. 471, 477-78 (1999) (noting that coverage under the statute is limited to "qualified individuals with a disability"); EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000) (setting out prima facie elements of ADA disability discrimination claim). The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." *Id.* at 478 (citing 42 U.S.C. § 12102[1]). Thus, to establish the existence of a disability, Plaintiff must satisfy a three-part test. *See, e.g.*, Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1997); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 803 (M.D.N.C. 1999) (discussing the test in the context of a motion to dismiss). A "plaintiff must show that (1) the ailment cited is a 'physical or mental impairment,' (2) the activity limited by that impairment is a 'major life activity,' and (3) the impairment 'substantially limits' that major life activity." Atkins, 106 F. Supp. 2d at 803.

### D. Exhaustion of Administrative Remedies

"Before a plaintiff may file suit under Title VII . . . he is required to file a charge of discrimination with the EEOC." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The same is true for alleged violations of the ADA. *See* Davis v. Va. Commonwealth Univ., 180 F.3d 626, 628 n. 3 (4th Cir. 1999). "Th[is] exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th

---

[1] The current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADAAA became effective on January 1, 2009, *id.* at 3559, and therefore does not apply to this case inasmuch as the alleged discriminatory acts occurred prior to January 1, 2009.

6

Cir. 2002). Although an administrative charge of discrimination does not strictly limit the Title VII suit that may follow, the scope of the civil action is confined by the scope of the administrative investigation that can reasonably be expected to follow the charge. *Id.* "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

"Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones, 551 F.3d at 300. "Thus, where '[n]either the complaint nor the amended complaint alleges' that the plaintiff has 'complied with these prerequisites,' the plaintiff has not 'properly invoked the court's jurisdiction under Title VII.'" Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (alteration in original) (quoting United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979)).

### III. ANALYSIS

#### A. Motion to Dismiss, DE-26

Because Plaintiff has included only minimal information in his amended complaint regarding the charges he filed with the EEOC, it is difficult to determine whether the Court may properly exercise jurisdiction over Plaintiff's claims. Plaintiff has the burden of demonstrating he has exhausted his administrative remedies before filing suit. *See* Richmond, Fredericksburg, & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984 (1992); Bess v. Cnty. of Cumberland, No. 5:10-CV-453-BR, 2011 U.S. Dist. LEXIS 81032, at *15-18 (E.D.N.C. July 25, 2011).

In his amended complaint, Plaintiff alleges only that he "filed charges with the [EEOC] regarding Defendants['] alleged discriminatory conduct on or about November 11, 2008" and received his notice of his right to sue from the EEOC on May 4, 2010. (DE-24, p.3). Plaintiff failed to include in the record[2] a copy of the right to sue letter he avers he received from the EEOC. In the original complaint filed with this Court, Plaintiff alleged Defendants discriminated against him based on race. (DE-4). He later amended his complaint to add an additional claim for violation of the ADA. (DE-24). Without more specific information regarding the charges Plaintiff filed with the EEOC, and without a copy of the right to sue notice issued by the EEOC, it is impossible to determine the extent to which Plaintiff may maintain his instant action, or whether his claims are procedurally barred. *See* Evans, 80 F.3d at 963 ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."). Because he has not met his burden of demonstrating exhaustion of administrative remedies, Plaintiff's claims are subject to dismissal.

Assuming *arguendo*, however, that Plaintiff's claims are properly before the Court, his amended complaint must nevertheless be dismissed for failure to state a claim upon which relief may be granted. Even taken in the light most favorable to him, Plaintiff's allegations fail to state a claim against Defendants for employment discrimination or wrongful termination in violation of Title VII or the ADA.

As noted *supra*, the elements for a prima facie claim of employment discrimination under Title VII are as follows: (1) member of a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees

---

[2] A review of the docket as of the date of this order reveals that Plaintiff has not corrected this deficiency.

outside the protected class. Coleman, 626 F.3d at 190. Plaintiff's complaint fails to set forth sufficient facts establishing these four elements.

First, Plaintiff's amended complaint does not mention his race. It states only that "Defendants, Dwight Alford, Blake Alford, and Ray Creech are each a white male and individual citizen of the State of North Carolina and each is an employee and/or principal of Defendant CEI" and that Plaintiff's termination "was discriminatory with respect to Plaintiff's race and disability." (DE-24, pp.1-2). Plaintiff notes in his untimely response that he is African American. Construing the pleadings liberally, the undersigned concludes that Plaintiff is a member of a protected class. Second, although not expressly indicated in the complaint, the undersigned will further infer that Plaintiff's job performance was at least minimally satisfactory, given that he had been employed with CEI for nearly ten years at the time of his termination. In his untimely response, Plaintiff states that his work record was "excellent." Thus, Plaintiff has sufficiently pled the second element. Third, Plaintiff properly alleged an adverse employment action, in that he was fired.

With regard to the fourth element, however, the undersigned can infer no longer. Plaintiff's complaint is devoid of any allegations to indicate that similarly situated employees outside the protected class (i.e., white employees) were treated differently than Plaintiff, or that his termination was otherwise motivated by any improper purpose. According to Plaintiff's own allegations, he was terminated after refusing to follow requests made by his supervisor and manager to assist in moving and unloading copying machines. Thus, from the face of the complaint, it appears Plaintiff was fired for insubordination. There are no allegations suggesting that other employees at CEI committed or could commit acts of insubordination with impunity,

9

Case 5:10-cv-00313-WW   Document 55   Filed 09/07/11   Page 9 of 13

or that the treatment Plaintiff received was harsh in comparison to similarly situated employees outside the protected class.

In his untimely response, Plaintiff alleges that "[o]ther White employees at CEI tampered with the company GPS, threatened to do bodily harm to a customer, played video games during work hours, [and] used company gas card for personal vehicles without being fired." (DE-36, p.2). Even if Plaintiff had properly pled these facts in a timely fashion, they are wholly inadequate to establish more than a speculative right to relief. Plaintiff does not identify the white employees or specify when, where, or under what circumstances these alleged acts of misconduct occurred. Further, none of the alleged misconduct constitutes acts of insubordination comparable to Plaintiff's refusal to follow the requests of his two supervisors. Most notably, Plaintiff does not allege that any supervisors at CEI had knowledge of the alleged misconduct by white employees. Thus, Plaintiff's allegations fail to raise more than a possibility of disparate treatment. *Compare* Gary v. Freightliner, 394 F. Supp. 2d 773, 781 (W.D.N.C. 2005) (granting summary judgment because the plaintiff failed to show disparate treatment; none of the other employees committed similar acts of insubordination, the misconduct for which the plaintiff was terminated). And although Plaintiff alleges that Defendants' conduct was "discriminatory," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot sustain Plaintiff's cause of action because courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50. Because Plaintiff fails to set forth any allegations establishing a plausible claim for employment discrimination or wrongful termination in violation of Title VII, this claim must be dismissed. *See* Makabin v. G4S Secure Solutions (USA), Inc., No. 3:10-CV-441-FDW-DCK, 2011 U.S. Dist. LEXIS 26237, at *15-16 (W.D.N.C. March 11, 2011) (dismissing the pro se plaintiff's

complaint as "wholly unsupported by any factual allegations that would establish the plausibility of Plaintiff's claim for relief" under Title VII).

Plaintiff's claim under the ADA is similarly bereft of factual support. In his amended complaint, Plaintiff does not specify any impairment but alleges only that he has a "documented medical condition." (DE-24, p.2). Nor does he allege sufficient facts to indicate that this medical condition "substantially limits" a "major life activity." Major life activities under the ADA include functions such as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). Where a plaintiff alleges only a temporary medical condition of limited duration, the plaintiff fails to show he is disabled and dismissal of the asserted claim is therefore appropriate. *See* Atkins, 106 F. Supp. 2d at 806.

According to the complaint, Plaintiff's unspecified medical condition limited his ability to assist in unloading and delivering copying machines but "did not affect his ability to perform his normal job duties of servicing and repairing copiers." (DE-24, p.2). No other information is provided in the amended complaint. In his untimely response, Plaintiff expands slightly on his asserted medical condition. Specifically, Plaintiff states that he "visited a heart specialist on April 7, 2008, after having chest pains. The heart specialist, Dr. William Earnhardt, assessed the plaintiff using a Stress Echocardiogram. Dr. Earnhardt advised the plaintiff to not do any heavy lifting." (DE-36, p.1).

Even if Plaintiff had timely included this information in the pleadings, it would not have established that Plaintiff's medical condition qualifies as an impairment that "substantially limits" a "major life activity" or that he is otherwise disabled under the ADA. With so few details on the severity or type of Plaintiff's heart condition, the court cannot infer whether Plaintiff's condition is merely temporary or whether his impairment substantially limits a major life activity. Thus, Plaintiff has alleged no facts from which the court can conclude that he is disabled pursuant to the ADA. Accordingly, even under the most liberal pleading standard, Plaintiff has failed to state a claim for discrimination in violation of the ADA. *See* Gray v. Walmart Stores, Inc., No. 7:10-CV-171-BR, 2011 U.S. Dist. LEXIS 51155, at *26-37 (E.D.N.C. May 12, 2011) (concluding that the pro se plaintiff had failed to allege sufficient facts to support her claim of discrimination under the ADA).

### B. Motions to Compel Deposition and for Sanctions; Motion to Seal; Motion for Summary Judgment

Defendants request this Court enter an order compelling Plaintiff's appearance for the purpose of being deposed and imposing sanctions for his failure to appear at his scheduled deposition. (DE-38, DE-42). Defendants also seek to seal a proposed exhibit, docket entry number 40, that they filed in support of their motion for sanctions. (DE-43). Finally, Defendants seek summary judgment on Plaintiff's claims. Given the resolution of Defendants' motion to dismiss, the motions to compel, to seal, and for summary judgment are moot and they are accordingly denied. The undersigned declines to impose sanctions on Plaintiff.

### IV. CONCLUSION

In summary, Plaintiff has failed to demonstrate he exhausted his administrative remedies before filing the instant complaint. It is therefore unclear whether the Court may properly

12

Case 5:10-cv-00313-WW   Document 55   Filed 09/07/11   Page 12 of 13

exercise subject matter jurisdiction over any or all of Plaintiff's claims. Alternatively, even taken in the light most favorable to him, Plaintiff's complaint fails to state a claim for wrongful termination or employment discrimination in violation of Title VII or the ADA. As Plaintiff fails to establish a claim upon which relief may be granted, Defendants' motion to dismiss (DE-26) is hereby GRANTED. Defendants' motion to seal Docket Entry No. 40 (DE-43), motions to compel (DE-38, DE-42), and motion for summary judgment (DE-51) are DENIED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Wednesday, September 7, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE